IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-41384
_____


BARBARA STRAWN,

                                        Plaintiff-Appellee,

                        versus

AFC ENTERPRISES INC.,
doing business as Churchs Chicken,

                                        Defendant-Appellant.

- - - - - - - - - -
Appeal from the United States District Court
for the Southern District of Texas
G-99-CV-241
- - - - - - - - - -
November 29, 2000

Before REAVLEY, BENAVIDES and DENNIS, Circuit Judges.

PER CURIAM:[*]

    The instant appeal is from the denial of a motion to compel

arbitration.  Concluding that the district court erred in reaching

the issue of arbitrability, we vacate the district court's order

and remand with instructions to refer the case to arbitration and

stay the proceedings pending arbitration.

I.   FACTUAL AND PROCEDURAL HISTORY

    This diversity case arose when plaintiff Barbara Strawn was

injured in a slip and fall accident within the course and scope of

_____

    [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

her employment at defendant AFC's Churchs Chicken Restaurant (AFC) in Alvin, Texas. AFC is a non-subscriber to the Texas Workers' Compensation Act (TWCA). Instead, AFC provides its employees defined injury benefits on a no-fault basis in exchange for their agreement to arbitrate any work-related dispute. Signing that agreement was a "condition precedent" for Strawn's employment with AFC, which began in 1997. The agreement does not waive or limit the causes of action, remedies, or damages that may be pursued in the arbitration proceeding. Additionally, AFC, as an employer that does not subscribe to the TWCA, cannot assert the defenses of contributory negligence, assumption of risk, or negligence of a fellow employee when an employee attempts to recover damages for personal injuries or death.[1] *See Cupit v. Walts,* 90 F.3d 107, 109 (5th Cir. 1996) (citing § 406.033 of the TWCA).

Some sixteen months after Strawn commenced working for AFC, she was injured at work and then began to receive benefit payments from the AFC plan. When her AFC benefits were nearing exhaustion, Strawn brought a negligence suit against AFC in Texas state court.[2] AFC removed to federal court based on diversity jurisdiction.

AFC moved to stay, or to dismiss, and compel arbitration. The district court denied the motion, stating that "where employers

---

[1] The TWCA discourages employers from choosing non-subscriber status by abolishing all the traditional common law defenses.

[2] As of August 1999, the AFC plan had paid Strawn $22,459 in wage-replacement benefits and $24,246.78 in medical benefits.

offer minimal benefits and unilaterally impose an arbitral forum on their injured employees, such a forum is sufficiently dissimilar to a judicial forum as to undermine Texas public policy with respect to the workers' compensation system." *Strawn v. AFC Enterprises,* 70 F. Supp. 2d 717, 725-26 (S.D. Tex. 1999). Thus, the district court concluded that AFC's plan was void as against Texas public policy.

AFC filed an interlocutory appeal from the district court's denial of its motion to compel and moved to stay proceedings pending appeal. The district court granted the motion to stay. AFC now argues that the district court's order denying its motion to compel arbitration should be reversed and remanded with instructions to send all Strawn's claims to binding arbitration and stay all proceedings pending arbitration.

II. ANALYSIS

AFC contends that the district court erred when it adjudicated Strawn's state-law public policy attack on AFC's arbitration agreement and benefit plan. Instead, AFC argues, the district court should have referred the claim to arbitration in the first instance. This Court reviews the denial of a motion to compel arbitration *de novo. Snap-On Tools Corp. v. Mason,* 18 F.3d 1261 (5th Cir. 1994).

The Supreme Court has made clear that the Federal Arbitration Act "establishes that, as a matter of federal law, any doubts

concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital v. Mercury Construction,* 460 U.S. 1, 25-26, 103 S.Ct. 927, 941 (1983). When determining a motion to compel arbitration under the Federal Arbitration Act, courts usually conduct a two-step inquiry. *Webb v. Investacorp, Inc.,* 89 F.3d 252, 257-58 (5th Cir. 1996). The first step is to decide whether the parties agreed to arbitrate the dispute at issue. *Id.* at 258. This decision involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute is within the scope of that arbitration agreement. *Id.* In making this decision, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Id.* (citation and internal quotation marks omitted). "In applying state law, however, `due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration.'" *Id.* Once a court determines that the parties agreed to arbitrate, the second step is "'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Id.* (*quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 3355

(1985)).

With respect to the first step of the *Webb* analysis, Strawn apparently recognizes that the dispute falls within the arbitration provision as written; however, she contends that the agreement was not valid.

As a threshold issue, AFC, relying on the Supreme Court's decision in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* contends that the district court erred by not referring to arbitration the *arbitrability* of Strawn's state-law public policy attack on AFC's arbitration agreement and benefit plan.  388 U.S. 395, 87 S.Ct. 1801 (1967).  In *Prima Paint,* the Supreme Court addressed the question whether arbitration or the federal district court was the proper forum in which to resolve a claim of fraud in the inducement under a contract that included an arbitration provision.  The Court pointed out that 9 U.S.C. § 4 directs a federal court to order arbitration to proceed if satisfied that "the making of the agreement for arbitration or the failure to comply [with the arbitration agreement] is not in issue."  The Court explained that "if the claim is fraud in the inducement of the arbitration clause itself--an issue which goes to the `making' of the agreement to arbitrate--the federal court may proceed to adjudicate it.  But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Prima Paint,* 388 U.S. at 403-04, 87 S.Ct. at 1806.  The Supreme

5

Court thus held that a federal district court may consider only issues relating to the making and performance of the agreement to arbitrate. *Id.* The arbitrator was to resolve any other claims.

Restated, the rule enunciated in *Prima Paint* is that if the complaint relates only to the arbitration clause itself, the court should adjudicate the claim. If, however, the complaint relates to the entire agreement, then it must be referred to the arbitrator for decision.

Our opinion in *Lawrence v. Comprehensive Business Serv. Co.*, provides some guidance with respect to this issue. 833 F.2d 1159 (5th Cir. 1987). In *Lawrence*, the plaintiffs argued that the agreement violated the Texas Public Accountancy Act of 1979 and that ordering arbitration pursuant to an arbitration clause in an illegal contract was improper. Applying the rule in *Prima Paint*, we rejected that argument, explaining that previously we had applied *Prima Paint* to enforce an arbitration clause in spite of a claim that the gas sales contract containing it was void from its inception because of the parties' failure to comply with a state statute regulating the sale of the state's gas. 833 F.2d at 1162 (discussing *Mesa Oper. Limited Partnership v. Louisiana Intrastate Gas Corp.,* 797 F.2d 238, 244 (5th Cir. 1986).[3]

---

[3] In *Bhatia v. Johnston,* 818 F.2d 418, 421 (5th Cir. 1987), this Court held that an investor's claim that a contract was invalid must be referred to arbitration because the investor's complaint alleged misrepresentations with respect to the entire contract, not just the arbitration clause.

The plaintiffs in *Lawrence* also argued that enforcing the arbitration provision of an illegal contract would contravene Texas law and is thus improper. We likewise rejected this argument, explaining that the "argument forgets that the arbitrability of an issue under the Federal Arbitration Act is a matter of federal law." *Lawrence,* 833 F.2d at 1162. *See also Perry v. Thomas,* 482 U.S. 482, 492 n.9, 107 S.Ct. 2520, 2527 n.9 (1987) (courts may not "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what we hold today the state legislature cannot").

In the instant case, Strawn's complaint relates to the entire agreement. Indeed, the district court explicitly understood Strawn "to be arguing that the combination of a unilaterally imposed arbitration agreement with a benefit plan significantly inferior to that available under the Workers' Compensation Act is void as against Texas public policy." *Strawn,* 70 F. Supp. 2d at 722.

Although the district court acknowledged the holding in *Prima Paint*, it concluded that the holding applied only to step one of the previously-cited *Webb* analysis, not step two. The district court believed the rule in *Prima Paint* was not implicated in this case because its own "analysis turn[ed] on the second step of the *Webb* inquiry." *Strawn,* 70 F. Supp. 2d at 727. In Strawn's appellate brief, however, she admits that she challenges the "AFC

7

arbitration demand under both Step 1 and Step 2 [of the *Webb*] analysis[.]" More importantly, regardless of whether the district court's analysis turns on the second step, we are constrained to apply the Supreme Court's rule in *Prima Paint* when determining the threshold issue of arbitrability.

The district court, in the alternative, stated that if the rule in *Prima Paint* did apply, it construed Strawn to be attacking the arbitration agreement in isolation. We are not persuaded. As previously stated, it is clear that Strawn's complaint related to the entire agreement--both the benefit plan and the arbitration agreement.

Standing alone, neither the benefit plan nor the arbitration clause violate Texas law or public policy. AFC is not required to participate in the statutory workers' compensation plan. *Cupit,* 90 F.3d at 109. Participation is voluntary in that an employer may refrain from becoming a subscriber under the TWCA. *Id.* With respect to the arbitration clause itself, Strawn was not required to limit or waive any cause of action; she simply was required to bring any claims to arbitration rather than to court. As such, the only possible claim Strawn has is that the *entire* agreement, *i.e.,* the combination of the benefit plan and the arbitration agreement, violate Texas public policy.

Under these circumstances, the district court erred in determining the issue of arbitrability. Instead, pursuant to *Prima*

*Paint,* the district court should have referred Strawn's claim to arbitration. Accordingly, the district court's order denying the motion to compel is vacated and remanded with instructions to refer the case to arbitration and stay the proceedings pending arbitration.

VACATED AND REMANDED

Judge Dennis concurs in the judgment only.

9